**IN THE SUPERIOR COURT OF GUAM**

| | |
|---|---|
| EUGENE T. IGROS, ET AL.,<br><br>Petitioners,<br><br>vs.<br><br>DEPARTMENT OF PUBLIC HEALTH AND SOCIAL SERVICES<br><br>GOVERNMENT OF GUAM,<br><br>Respondents. | Superior Court Case No. <u>SP0127-20</u><br><br>**DECISION AND ORDER RE**<br><br>**MOTION FOR RECONSIDERATION**<br><br>**&** |
| And Related Cases Concerning Government Quarantine. | Superior Court Case Nos. <u>SP0129-20;</u><br><u>SP0130-20; SP0131-20; SP0132-20;</u><br><u>SP0134-20; SP0135-20; SP0137-20;</u><br><u>SP0138-20; SP0140-20; SP0147-20;</u><br><u>SP0148-20; SP0149-20; and SP0150-20</u><br><br>**APPLICATION FOR ATTORNEY'S FEES** |

This Decision and Order considers the Department of Public Health and Social Services and the Government of Guam's (collectively, "DPHSS") Motion for Reconsideration of the Court's October 15, 2020 Decision and Order in *Igros v. DPHSS*, SP0127-20, which awarded the Igroses their attorney's fees. In addition, this Decision and Order addresses the request for attorney's fees made in the other above-captioned cases filed by quarantined individuals. In summary, the Court finds that the Legislature waived sovereign immunity over the recovery of attorney's fees in instances in which DPHSS has breached the conditions of quarantine. The Court therefore DENIES the Motion for Reconsideration in *Igros*, SP0127-20, and GRANTS the

ORIGINAL

application for attorney's fees in *Cruz*, SP0129-20, *Convento*, SP0131-20, *Martinez*, SP0132-20, *Jones*, SP0134-20, *Ikei*, SP0138-20, and *Isaac*, SP0147-20. In *Lang*, SP0130-20, *Esperon*, SP0135-20, and *Buckwalter*, SP0148-20, where there has been no finding that DPHSS breached the conditions of quarantine, the Court DENIES the applications for attorney's fees. In *Tanetani*, SP0140-20, *Jenkins*, SP0149-20, and *Brantner*, SP0150-20, where no finding has yet been made regarding whether DPHSS breached the conditions of quarantine, the Court reserves ruling on the applications for attorney's fees pending an evidentiary hearing.

## I.    Initial COVID litigation

In March 2020, the Governor of Guam declared a public health emergency and restricted entry into Guam by placing incoming travelers into quarantine at a government facility. Executive Order No. ("EO") 2020-03; EO 2020-04. Acknowledging that the quarantine was involuntary, DPHSS filed petitions under 10 GCA § 19605 seeking the approval of the continued quarantine of passengers arriving from the Philippines.[1] *See* SP0049-20 (Pet. ¶ 10 (Mar. 27, 2020)) ("Director issued an Emergency *Involuntary* Detention Order at . . . the time and date at which the quarantine commenced.") (emphasis added); Decl. Linda Denorcey ¶¶ 3-4 (Mar. 27, 2020); Petrs.' Supp. Documents, Ex. 3 (Mar. 31, 2020) (DPHSS directive furnished to passengers states that "I also believe that seeking voluntary compliance creates a serious risk of harm"). In these cases filed in the early part of the COVID-19 pandemic, DPHSS issued directives informing the individuals that they had a right to counsel and how they could object to being placed into quarantine. *See* SP0049-20 (Petrs.' Supp. Documents, Ex. 3).

---

[1] *In Re: Travelers arriving in Guam from Manila, Philippines on or about March 19, 2020*, SP0049-20; *In Re: Travelers arriving in Guam from Manila, Philippines on or about March 20, 2020*, SP0051-20; *In Re: Travelers arriving in Guam from Manila, Philippines on or about March 21, 2020*, SP0052-20; *In Re: J.R.*, SP0053-20; *In Re: M.V. and M.V.*, SP0054-20; and *B.B. vs. Linda Denorcey, Director of Public Health and Social Services*, SP0057-20.

ORIGINAL

Upon receipt of the petitions, the Court appointed counsel for the quarantined individuals. *See* SP0049-20 (Order Setting Hearing and Appointing Counsel (Mar. 30, 2020)). After communicating with their court-appointed counsel, the passengers agreed to serve the remainder of a fourteen-day quarantine. *See* SP0049-20 (Response to Gov. Pet. (Mar. 31, 2020)).

## II.   Cases Involving Private Attorneys

Six months passed until the next series of cases involving quarantine.[2] By this time, DPHSS chose not to issue directives or file section 19605 petitions but instead asked passengers to sign consents to voluntary quarantine. Not having the benefit of court-appointed counsel, the individuals seeking relief from quarantine had to hire private attorneys. The following discussion is divided into cases with decisions favorable to the quarantined individuals, cases resolved in favor of DPHSS, cases resolved out of court, and cases resolved through a change in policy.

### A. Cases Resolved in Favor of Passengers

1.   *Igros,* SP0127-20

The Igros family retained the Law Office of Rachel Taimanao-Ayuyu when they presented their Verified Petition for a Writ of Habeas Corpus on September 9, 2020. The Igroses arrived on Guam on September 1, 2020, and were placed into the government facility for a fourteen-day quarantine. SP0127-20 (Findings of Fact and Concls. Of Law ("FFCL") at 2 (Sep. 12, 2020)). The Igroses alleged that in doing so, DPHSS did not comply with 10 GCA § 19605.

On September 11, 2020, the Court heard testimony from Eugene Igros and DPHSS Containment and Infection Control Branch Lead, Chima Mbakwem. The Court found that

---

[2] In August 2020, the Court received a Verified Petition for Writ of Habeas Corpus from Robert Shawl. Shawl, who retained the private law firm of Fisher & Associates, prevailed in his request for release from quarantine. SP0123-20 (Order After Hearing (Aug. 28, 2020); J. (Sep. 11, 2020)). Shawl's case is not part of these consolidated proceedings.

ORIGINAL

DPHSS violated the Igroses' rights by quarantining them without complying with section 19605. *See id.* at 11. The Court found that if DPHSS complied with section 19605(a) or (b), the Igroses would have been appointed counsel. Instead, DPHSS deprived the Igroses of the right to counsel. *See id.* at 10. The Court ordered DPHSS to pay the Igroses' attorney's fees and costs. *See id.* at 10.

DPHSS moved to reconsider the Court's decision regarding the involuntariness of the Igroses' quarantine as well as the award for attorney's fees. The Court first addressed the issue of involuntariness and confirmed its finding that the Governor instituted a mandatory quarantine under EO 2020-08 and EO 2020-09. SP0127-20 (Dec. and Order re Ex Parte Mot. Reconsideration at 5 (Oct. 15, 2020)). The Court's decision was grounded in the language of the Executive Orders, DPHSS Guidance Memoranda, the criminal penalties imposed for noncompliance, DPHSS' concession that the quarantine was mandatory, and the evidence presented by the Igroses. *See id.* at 5-7. The Court also contrasted those factors against DPHSS' approach in the prior quarantine cases whereby the quarantined individuals were advised of their rights to counsel and to object, DPHSS acknowledged the involuntary nature of the quarantine at the time, and DPHSS followed section 19605 in filing petitions to extend the quarantine period. *Id.* at 11-12.

The Court entertained the remainder of the Motion for Reconsideration regarding the attorney's fees at a later hearing.

### 2. *Cruz*, SP0129-20

Janella Cruz and her minor children retained the Law Office of Rachel Taimanao-Ayuyu in their September 15, 2020 Verified Petition for a Writ of Habeas Corpus and Injunctive Relief. On September 7, 2020, Cruz's two minor children had travelled from Saipan to Guam and were

ORIGINAL

placed in the government quarantine facility. SP0129-20 (Dec. and Order at 2 (Sep. 24, 2020)). At the time, DPHSS followed Guidance Memo 2020-11 Rev7 ("Rev7") which placed unaccompanied minors into a government quarantine facility and also mandated a parent or guardian to supervise the minors within the facility. Under that policy, DPHSS also forced Cruz into the facility with them but did not issue Cruz a written directive until the sixth day of her quarantine. *Id.* at 3. The Court determined that DPHSS' policy was unconstitutional and violated Cruz's substantive and procedural due process rights as an individual and as a parent. SP0129-20 (Dec. and Order (Sept. 24, 2020)) (memorializing decision issued on Sept. 18, 2020).

The *Cruz* case was the first of a series of cases in which the Court consolidated evidence presented over the period of weeks by four firms on behalf of their clients. The consolidated hearing occurred on September 17-19, 22-26, and 28-30, and October 1-3, 2020. During the consolidated hearings, the Court heard evidence from Mbakwem, DPHSS Director Arthur San Agustin, Dr. Michael Cruz, DPHSS' epidemiology fellow Stephanie Kern-Allely, and Dr. Felix Cabrera explaining, among other issues, why DPHSS had set fourteen days for quarantine, the efficacy and availability of testing, and DPHSS' perceived failure with an earlier program allowing passengers to directly quarantine at home.

### 3. *Convento*, SP0131-20

Sean Convento retained Fisher & Associates to represent him in his September 16, 2020 Verified Petition for a Writ of Habeas Corpus; Injunctive Relief. He had been in a government quarantine since September 7, 2020.

The Court determined that he fell into the category of persons like the Igroses who did not receive a directive to quarantine and for whom the Government failed to file petitions on the tenth day of quarantine as required under 10 GCA § 19605(b). In holding that DPHSS breached

ORIGINAL

the conditions of quarantine, the Court explained, "since DPHSS has not complied with Guam law with respect to Convento's due process rights, the Court is left with no statutory means under Article 6 to continue his quarantine at a government facility." SP0131-20 (Dec. and Order (Sep. 24, 2020)) (memorializing decision issued on Sep. 18, 2020)). Convento agreed to complete his quarantine at home. SP031-20 (V. Pet. at 8 (Sep. 16, 2020)).

### 4. *Martinez*, SP0132-20

Odessa and Roque Martinez retained the Law Office of Jacqueline Taitano Terlaje, P.C. to represent them in their September 17, 2020 Verified Petition for a Writ of Habeas Corpus and Injunctive Relief. The Martinezes, residents of Guam, left Guam on September 9, 2020, and returned on September 14--a total of five days off-island. SP0132-20 (Dec. and Order at 2 (Oct. 6, 2020)). They received a directive to quarantine a day after DPHSS placed them into the quarantine facility. SP0132-20 (Dec. and Order at 3).

The Martinezes claimed that they fell under an exception to quarantine pursuant to 10 GCA § 3333--the same statute the Governor invoked in mandating quarantine in EO 2020-29. The Court agreed and allowed their transfer to home quarantine. SP0132-20 (Dec. and Order (memorializing decision issued on September 19, 2020)). The Court also found that DPHSS did not secure the Martinezes' voluntary consent to quarantine or issue them a directive under Chapter 19, and therefore could not avail of quarantining them under that provision. SP0132-20 (Dec. and Order at 4).

A day after the Court's decision, the Governor rescinded her prior executive orders which relied on section 3333 as a basis for quarantine. *See* EO 2020-33.

### 5. *Jones*, SP0134-20

Trevin Jones arrived on Guam on September 16, 2020, and was placed in government

ORIGINAL

quarantine. He retained the Law Office of Jacqueline Taitano Terlaje, P.C. to represent him in his September 21, 2020 Verified Petition for Habeas Corpus, Alternative Writ Mandamus and Injunctive Relief.

Like the Igroses, Jones contested the voluntariness of his quarantine and alleged that he was not presented with a directive to quarantine. The Court found that "DPHSS failed to adequately inform Jones of the nature of his quarantine, his rights to challenge the quarantine, or his right to court-appointed counsel." SP0134-20 (Dec. and Order at 4 (Nov. 6, 2020) (memorializing decision issued on Sep. 24, 2020)). In fact, Jones did not receive a directive until the date of the hearing on his Petition--eight days after his arrival.[3]

6. *Pang*, SP0137-20

Christina Pang entered Guam on September 12, 2020, and was not provided with a directive to quarantine. She subsequently retained Fisher & Associates to represent her in her September 21, 2020 Verified Petition for a Writ of Habeas Corpus. Based on DPHSS' failure to issue a directive or petition for her continued quarantine within ten days, the Court ordered DPHSS to transfer Pang to home quarantine for the remaining quarantine term. SP0137-20 (Dec. and Order (Sep. 24, 2020)).

7. *Ikei, et al.*, SP0138-20

The Ikei family arrived on Guam on September 16, 2020, with plans to attend a family funeral. They entered into quarantine and awaited the results of their hardship application. Around September 20, one member of the Ikei family tested positive for COVID-19, causing

---

[3] Moreover, the Court found that DPHSS did not provide Jones with adequate and competent medical care by disregarding his requests for medical treatment for his injuries. Jones arrived on Guam following a UFC fight in Las Vegas where he sustained injuries needing daily treatment. As of the date of the hearing--again, eight days after his arrival--DPHSS informed the Court it was still reviewing his hardship application. *See* SP0134-20 (Dec. and Order at 3).

ORIGINAL

DPHSS to seek her isolation while restarting the 14-day quarantine for the rest of the family.

The Ikeis retained the Law Office of Jacqueline Taitano Terlaje, P.C. to represent them in their

Verified Petition for a Writ of Habeas Corpus, Alternative Writ [of] Mandamus and Injunctive

Relief. By the time of the *Ikei* petition, the issues in the COVID-related litigation expanded from

the passengers' due process rights to whether DPHSS' quarantine was reasonably necessary and

whether there are less restrictive alternatives--the standards for quarantine under 10 GCA §

19604.

Simultaneously with the consolidated hearings, DPHSS changed its quarantine policy

which had mandated fourteen days in a government facility. *See* DPHSS Guidance Memo

2020-11 Rev10 ("Rev10"). As this Court noted,

> [On] September 25 . . . DPHSS issued Guidance Memo 2020-11 Rev10
> ("Rev10") following EO2020-33. Rev 10 carved out a broad exception to
> spending the entire fourteen days in government facility quarantine. Under the
> new policy individuals in a government quarantine facility may receive a
> COVID-19 test upon their consent on the sixth day. For those who choose to
> test, if the individual receives a negative result, they may transfer to home
> quarantine for the remainder of their fourteen-day quarantine. Persons who test
> positive, on the other hand, are subject to isolation protocols established by
> DPHSS, including home isolation if the home is deemed suitable by DPHSS.

SP0138-20 (FFCL at 7-8 (Oct. 27, 2020)).

The Court determined that DPHSS' revised policy which allows an initial mandatory

quarantine, and then a potential transfer home upon the receipt of a negative test result, was

reasonably necessary under section 19604. SP0138-20 (FFCL at 15-19). However, the Court

found that the evidence justified less restrictive alternatives for persons who are asymptomatic

and refuse to test. The Court determined that such persons should be transferred out of

government facility quarantine by day ten if they have remained asymptomatic. SP0138-20

(FFCL at 23-24).



As it pertained to the Ikeis, the Court found that DPHSS violated Guam law in not issuing them a directive or informing them of their rights. SP0138-20 (FFCL at 24).

### 8. *Isaac*, SP0147-20

Brian E. Isaac arrived on September 12, 2020. He retained the Law Office of Rachel Taimano-Ayuyu to represent him in his September 24, 2020 Verified Petition for a Writ of Habeas Corpus and Mandamus Relief. The Court ordered Isaac's immediate release as DPHSS did not file a petition on the tenth day of Isaac's quarantine, in violation of section 19605(b). SP0147-20 (Order for Release (Sep. 25, 2020)).

## B. Cases resolved in favor of DPHSS

### 1. *Lang*, SP0130-20

Marcus Lang retained the Law Office of Jacqueline Taitano Terlaje, P.C. to represent him in his September 16, 2020 Verified Petition for a Writ of Habeas Corpus and Injunctive Relief. The Court dismissed the petition due to the lack of personal jurisdiction. SP0130-20 (Dec. and Order (Sep. 21, 2020)). Lang nonetheless seeks an award of attorney's fees.

### 2. *Esperon*, SP0135-20

Esperon retained the Law Office of Rachel Taimanao-Ayuyu to represent her in her September 21, 2020 Verified Petition for a Writ of Habeas Corpus. The Court dismissed the petition for mootness. SP0135-20 (Dec. and Order re Mot. Dismiss Pet. for Mootness (Oct. 21, 2020) and Dec. and Order. Re Mot. Reconsideration (Jan. 6, 2021)). Despite the Court's dismissal, Esperon seeks an award of attorney's fees.

## C. Cases resolved without Court involvement

### 1. *Buckwalter*, SP0148-20

Katlyn Buckwalter retained the Law Office of Jacqueline Taitano Terlaje, P.C. to

ORIGINAL

represent her in her September 25, 2020 Verified Petition for a Writ of Habeas Corpus,
Alternative Writ [of] Mandamus and Injunctive Relief. The Court issued an Order to Show
Cause and heard Ms. Buckwalter's case on September 29, 2020.

During that hearing, Buckwater's attorney represented that she was being tested and that
"if she was released it would dispose of her case." SP0138-20 (Minute Entry at 1:14 (Sep. 29,
2020)). She subsequently tested negative and was released. The Court considered the matter
resolved.

### D. Cases resolved through DPHSS' change in policy

As already noted, on or about September 25, 2020, DPHSS issued Rev10, which changed
its policy from a mandatory fourteen-day quarantine at the government facility to mandating it
for six days, and testing on or about the sixth day. On September 25, 2020, the Court ordered
that passengers in DPHSS' facility during the change in policy would be able to transfer home
once they received a negative test result. *See* SP0142-20, SP0143-20, SP0144-20, SP0145-20,
and SP0146-20 (Order (Sep. 25, 2020) (applicable to passengers arriving between September 12
and 20, 2020)). The following cases were resolved through this change in policy; however, the
Court has never made a determination on their claims of breaches of the conditions of
quarantine.

### 1. *Tanetani*, SP0140-20

Takakao Tanetani arrived on September 15, 2020. Tanetani retained the Law Office of
Rachel Taimanao-Ayuyu to represent her in her September 23, 2020 Verified Petition for a Writ
of Habeas Corpus. She tested negative and would have transferred to home quarantine under the
Court's September 25, 2020 Order. SP0145-20 (Order).



2. *Jenkins*, SP0149-20

Joshua Jenkins arrived on September 16, 2020. Jenkins retained the Law Office of Jacqueline Taitano Terlaje, P.C. to represent him in his September 25, 2020 Verified Petition for a Writ of Habeas Corpus, Alternative Writ [of] Mandamus and Injunctive Relief. He was subject to the new DPHSS policy and the Court's September 25, 2020 Order.

3. *Brantner*, SP0150-20

Karen Brantner arrived on September 16, 2020. Brantner retained the Law Office of Jacqueline Taitano Terlaje, P.C. to represent her in her September 25, 2020 Verified Petition for a Writ of Habeas Corpus, Alternative Writ [of] Mandamus and Injunctive Relief. She was subject to the new DPHSS policy and the Court's September 25, 2020 Order.

## III. Appointment of PDSC and DPHSS' efforts to obstruct the appointment of counsel and the provision of legal services.

By late September 2020, it was apparent that the multitude of quarantine cases required streamlining. After hearing from multiple petitioners that they did not consent to the quarantine despite having signed voluntary consents, the Court determined that individuals needed the advice of counsel before or at the time of quarantine so that they understood what was happening to them and what their rights were.

On September 24, 2020, in the midst of taking testimony in the consolidated quarantine cases, the Court announced its appointment of the Public Defender Service Corporation ("PDSC") to represent all incoming passengers intended to be quarantined by the government. The Court ordered DPHSS to cooperate with PDSC in contacting quarantined individuals. SP0138-20 (Minute Entry at 11:07:05 (Sep. 24, 2020)).

On September 25, 2020, the Court issued a General Order Appointing PDSC to

ORIGINAL

Represent Persons in Quarantine and Entering Quarantine.  The Order stated:

> The Court finds that, upon hearing the numerous petitions that have been filed since the court issued its Decision and Order on September 12, 2020, the Government continues to fail to comply with the requirements 10 GCA § 19605 when quarantining individuals arriving in Guam.  The Court notes that in cases SP0129-20, SP0131-20, SP0132-20, SP0134-20, SP0135-20, SP0137-20, and SP0138-20 the Government failed to provide a written directive prior to transporting the individuals to a government quarantine facility, as required under sections 19605(a)(1) and (3).  While the Government contends that they may rely on voluntary quarantine letters signed by incoming passengers, the recent testimony also demonstrates that persons who have signed those forms continue to not understand their rights to object, to petition the court for relief, or to counsel.
>
> Furthermore, the Court is required by section 19605(e) to appoint counsel to represent individuals or groups of individuals who are, or who are about to be isolated or quarantined pursuant to the provisions of section 19605. Appointments are to be made pursuant to a Public Health Emergency Plan. However, the government has yet to provide a Public Health Emergency Plan instructing the Court.
>
> Until such time that the Government provides the Court with a Public Health Emergency Plan instructing the court on how counsel is to be appointed and persons adequately informed of their rights under Guam law, the Court APPOINTS Public Defender Service Corporation ("PDSC") to serve as attorney for all quarantined individuals and persons expected to be quarantined.

SP0127-20 (Gen. Order Appointing PDSC (Sep. 25, 2020)).

Following the Court's Order, DPHSS objected to the Court's ability to appoint counsel and obstructed PDSC's ability to communicate with its clients.  For example, at a hearing on September 24, 2020, Deputy Attorney General James Canto questioned the Court's authority to appoint counsel and then took the position that the statute does not require DPHSS to inform passengers of their rights when they get off the plane.  SP0138-20 (Minute Entry at 11:14 - 11:18 (Sep. 24, 2020).

Following its appointment, PDSC encountered numerous obstacles in executing its responsibilities.  On October 1, 2020, PDSC informed the Court that it developed a form to hand



out to incoming passengers, but that DPHSS refused to provide the form under the belief the form mischaracterized the law. SP0138-20 (Minute Entry at 10:05 (Oct. 1, 2020)). Then, on October 16, 2020, PDSC informed the Court that DPHSS did not hand out PDSC's contact information unless a passenger did not consent to quarantine. SP0181-20 (Minute Entry (Oct. 16, 2020)).

PDSC also asked for the names of persons being quarantined--that is, PDSC's clients--so that they could be contacted. SPD185-20 (Minute Entry (Oct. 20, 2020)). DPHSS said it could not produce that list until on or about the passengers' tenth day in quarantine. SP0183-20 (Minute Entry at 3:13 (Oct. 29, 2020)). The Court again addressed this on October 30, 2020, in which DPHSS' attorney claimed that it does not receive the passenger listing from its client until the time to file the petition--generally, the tenth day after a person is in quarantine. SP0202-20 (Minute Entry at 3:35 (Oct. 30, 2020)). DPHSS continued to not cooperate, so on November 4, 2020, the Court ordered DPHSS to provide the names of all quarantined persons by their fifth day in quarantine. SP0206-20 (Minute Entry at 4:43 (Nov. 4, 2020)). The Court found it necessary to remind DPHSS of its Order again on November 5, 2020. SP0207-20 (Minute Entry at 12:07 (Nov. 5, 2020)).

After appointing PDSC, the Court consolidated future petitions from quarantined individuals under SP0206-20, which it recaptioned as *In Re Individuals or Groups of Individuals Quarantined or Isolated by DPHSS as a Result of Executive Orders and DPHSS Guidance Memoranda.* These requests for relief from quarantine were all prosecuted by PDSC pursuant to the Court's Order of appointment.[4]

---

[4] As of April 27, 2021, nineteen further petitions have been filed under SP0206-20, ranging in issues from the length of quarantine, to inadequate meals, to unhygienic facilities. The Court issued orders to DPHSS which included, among others, a transfer home due to failure to provide adequate sustenance to a vegetarian, a review of DPHSS'

ORIGINAL

## V.     Law and Discussion

### A. The Legislature waived sovereign immunity for remedies owed under section 19605.

DPHSS argues that the doctrine of sovereign immunity bars the Court from awarding attorney's fees to Petitioners to be paid by the government.[5] Specifically, DPHSS argues that the Guam Legislature did not expressly waive sovereign immunity for the recovery of attorney's fees; in the absence of an express waiver, sovereign immunity may not be implicitly waived; and in cases brought under 10 GCA § 19605, there is no equitable doctrine that overcomes sovereign immunity's prohibition on awarding attorney fees to Petitioners.

"The Government of Guam enjoys broad sovereign immunity . . . when engaged in governmental functions.'" *Gange v. Gov't of Guam*, 2017 Guam 2 ¶ 14 (citing *Bautista* v. *Agustin*, 2015 Guam 23 ¶ 19). Sovereign immunity protects public funds and the efficient and uninterrupted administration of government functions. *Gange*, 2017 Guam 2 ¶ 17. "Through the Organic Act of Guam, 'Congress has provided a specific mechanism by which sovereign immunity may be waived.'" *Bautista*, 2015 Guam 23 ¶ 18 (citing *Sumitomo* v. *v. Gov't of Guam*, 2001 Guam 23 ¶ 8). Section 1421a of the Organic Act provides:

> The government of Guam shall have the powers set forth in this chapter, shall have power to sue by such name, and, *with the consent of the legislature evidenced by enacted law, may be sued* upon any contract entered into with respect to, or any tort committed incident to, the exercise by the government of Guam of any of its lawful powers.

---

provision of mental health services, a transfer home due to the bug infestation at the isolation facility, and the duration of isolation.

[5] As to the Igroses, the Court reviews DPHSS's position under Guam Rule of Civil Procedure 59(e). Under Rule 59(e), reconsideration may be granted where the trial court committed clear error. *Rong Chang Co., Ltd.* v. *M2P, Inc.*, 2012 Guam 1 ¶ 16.

ORIGINAL

48 U.S.C.A. § 1421a (emphasis added). Thus, "[i]f sovereign immunity is applicable and would otherwise act to deprive the courts of subject matter jurisdiction, only duly enacted legislation can waive this immunity, and any waiver must be express." *Gange*, 2017 Guam 2 ¶ 15.

DPHSS is an agency of the Government of Guam, thus, sovereign immunity applies to it. *See* 10 GCA § 3101 (establishing a division of Public Health in the Department of Public Health and Social Services). Generally, "the doctrine of sovereign immunity does not bar an action seeking only injunctive relief . . . but an award of attorney's fees is barred by sovereign immunity where it applies . . . ." *Gange*, 2017 Guam 2 ¶ 15 (citing *Ardestani v. I.N.S.*, 502 U.S. 129, 137 (1991)). Accordingly, the Court first turns to whether the Guam Legislature waived sovereign immunity for the award of attorney fees for actions brought pursuant to Title 10, Chapter 19, Article 6 of the Guam Code Annotated, entitled "Special Powers During a State of Public Health Emergency: *Protection of Persons.*" (Emphasis added.)

Here, Petitioners sought relief under 10 GCA § 19605(c)(2), which prescribes that individuals isolated or quarantined pursuant to Chapter 19 "may request a hearing in the Superior Court of Guam for remedies regarding breaches to the conditions of isolation or quarantine." Two portions of the statutory language are relevant to the Court's analysis. First, section 19605 addresses the government action at the heart of the suits--the quarantining of individuals--and explicitly allows for judicial review of the government action. *See* 10 GCA § 19605(c)(2). Second, the statute enables the Court to award remedies regarding breaches to the conditions of isolation or quarantine. Since remedies may be awarded in instances where there was a breach to the conditions of quarantine, the Court first turns to the cases where it found DPHSS breached section 19605.

ORIGINAL

As outlined above, the resolution of the petitions in favor of the incoming passengers categorically involved a finding that DPHSS breached the requirements of Article 6 when quarantining the Petitioners. In *Igros, Cruz, Convento, Martinez, Jones, Ikei*, and *Pang*, the Court found that DPHSS failed to issue a written directive upon quarantining the Petitioners, as required by section 19605(a)(1): "The public health authority may temporarily isolate or quarantine an individual, or groups of individuals, *through a written directive* if delay in imposing the isolation or quarantine would significantly jeopardize the public health authority's ability to prevent or limit the transmission of a contagious or possibly contagious disease to others." (Emphasis added.) In *Convento, Pang*, and *Issac*, the Court found that DPHSS held the Petitioners in quarantine beyond ten days without petitioning the Court for an order authorizing their continued isolation or quarantine, as required by section 19605(a)(4).[6]

The Court next turns to whether an award of attorney fees fits within the scope of the remedies the Court may award for DPHSS' breach under Article 6. The Court in *Igros* summarized the manner in which DPHSS breached the Petitioners' rights: "[i]n not issuing a directive and not formally petitioning the Court, DPHSS has left it up to unrepresented individuals quarantined in isolated hotel rooms to figure out their due process rights including their right to counsel." SP0127-20 (FFCL at 11). By law, the directive would have included a copy of Article 6, which outlines the provision of the appointment of counsel and the procedures for seeking relief from quarantine. DPHSS' breach by not issuing a directive resulted in the Petitioners being deprived of notice of their rights under Article 6.

---

[6] "Within ten (10) days after issuing the written directive, the public health authority shall file a petition pursuant to § 19605(b) for a court order authorizing the continued isolation or quarantine of the isolated or quarantined individual or groups of individuals." 10 GCA § 19605(a)(4).


ORIGINAL

Part of those rights include the right to counsel. 10 GCA § 19605(e). More specifically, during a public health emergency, DPHSS is tasked to develop a Public Health Emergency Plan that will specify the procedure for appointment of counsel for persons who are or about to be quarantined. Had the government satisfied its obligation to develop that plan,[7] Petitioners would have had the opportunity to be represented by counsel in bringing their petitions at no cost to them. Instead, Petitioners were unaware of their rights under Article 6 and had to hire private counsel to represent them in filing their petitions. Section 19605(e) endorses fee-shifting by compelling the government to bear the cost of an attorney to represent quarantined or isolated individuals. Thus, based on the statutory language in Article 6 requiring the government to bear the expenses of counsel, the Court is satisfied that an award of attorney fees is within the scope of remedies permitted under Article 6.

In summary, the remedy provision under section 19605(c)(2) and the language found in section 19605(e) apportioning the expense of counsel to the government amount to an express waiver of sovereign immunity for attorney's fees for those Petitioners for whom the Court found DPHSS breached the conditions of quarantine. Accordingly, the Court finds the award of attorney's fees appropriate for *Igros, Cruz, Convento, Martinez, Jones, Ikei, Pang*, and *Isaac*.

This holding also means that in cases in which DPHSS did not breach the conditions of quarantine, the Legislature has not waived sovereign immunity. For example, in *Lang* and *Esperon*, the Court found in favor of DPHSS. Because Lang and Esperon did not demonstrate a breach to the conditions of quarantine, the Court declines to award any resulting remedies such as attorney's fees or costs. Also, in *Buckwalter*, the individual's attorney represented that the

---

[7] Even in SP0206-20, the now consolidated case for petitions for relief from quarantine or isolation, the Court has never been informed that DPHSS has developed a Public Health Emergency Plan that addresses the procedure for appointment of counsel as section 19605 directs it to do.


ORIGINAL

matter would be resolved if she was transferred to home quarantine. Since the parties reached a resolution without further Court determination of any breach, *Buckwalter* is not entitled to attorney's fees.

*Tanetani*, *Jenkins*, and *Brantner*, however, remain unresolved as it concerns their allegations of breaches of the conditions of quarantine. These petitioners were transferred to home quarantine as a result of the new DPHSS policy and the Court's September 25, 2020 Order; thus the Court made no specific findings as to whether DPHSS breached the conditions of quarantine. All three, however, allege in their Petitions that DPHSS failed to provide notice of their rights upon quarantining them. Since the Court's jurisdiction to award attorney's fees hinges on whether DPHSS breached the conditions of quarantine, the Court will set an evidentiary hearing prior to ruling on whether an award of attorney fees is warranted in these three cases.

## B. Equitable theories of recovery.

### 1. Equitable grounds raised by Petitioners.

Petitioners raise alternative grounds to recover attorneys fees--specifically, the substantial benefit and private attorney general doctrines. The Guam Supreme Court acknowledges equitable exceptions to the American Rule, which generally requires parties to bear their respective costs of legal representation. *See Fleming v. Quigley*, 2003 Guam 4 n.3. The Court now examines whether either doctrine applies here.

#### a. The substantial benefit doctrine does not apply to this case.

The Guam Supreme Court has recognized and applied the equitable doctrine of substantial benefit. *See Matter of Guardianship of Moylan*, 2018 Guam 8 ¶ 24. The substantial benefit doctrine applies when a statute fails to provide the recovery of attorney's fees as relief

ORIGINAL

and no common fund has been created but a concrete and significant benefit has nonetheless been conferred on an ascertainable class. *Id.* at ¶ 25. The doctrine rests on concepts of unjust enrichment: "those enriched by an economic windfall should bear their fair share of the costs expended to create the benefits obtained." *Id.* In other words, those who are unjustly enriched are forced to share the costs incurred by those who paid for attorneys.

In *Moylan*, a case between private persons, the Guam Supreme Court recognized that the ward received a substantial benefit in the recovery of funds misappropriated by her guardians. The court ruled that the party initiating the action to recover the fees was entitled to shift the burden of his fees to the party who ultimately benefited--the ward.

No Guam case has yet discussed the substantial benefit doctrine when the government is the opposing party. Thus this Court looks to how other jurisdictions analyze this particular scenario.

In *Thomas v. City of North Las Vegas*, 127 P.3d 1057 (Nev. 2006), two police officers sued the City of Las Vegas to compel the arbitration of their employment cases under a collective bargaining agreement. The Nevada Supreme Court rejected the applicability of the substantial benefit doctrine because the city's taxpayers received no benefit from the litigation--different from a scenario in which the police department rather than the city's taxpayers would be the adverse party. Had the police officers sued the police department, there would be an arguable claim that all members of the police department should share in the attorney's fees incurred by the two officers if they prevailed. However, "shifting attorney fees to City of North Las Vegas citizen taxpayers would not shift the cost to those benefiting." *Id.* at 1065.

In *Save El Toro Assn. v. Days*, 159 Cal. Rptr. 577 (Cal. App. 1979), a California appellate court denied the application of the substantial benefit doctrine despite city residents' successful

ORIGINAL

challenge to the creation of an assessment district. The court recognized that the substantial benefit doctrine renders the unsuccessful party as an "involuntary client" of the attorneys who prevailed. Like in *Thomas*, the decision turned on whether the losing party ought to share in the attorney's fees.

> When the benefits bestowed on others become less tangible and more ephemeral, as is the case with the effectuation of constitutional or statutory policy, the equity in charging involuntary beneficiaries with the costs of obtaining such benefits on an unjust enrichment theory becomes troublesome. Although the plaintiff and others in the benefited class may place a high value on such intangible benefits, other members of the benefited class may place a lower value on such benefits, and may legitimately complain that they should not be involuntarily saddled with costs that are out of proportion to their perceived benefit. Under such circumstances, the notion of unjust enrichment fails as a justification for an award of attorney's fees.

*Save El Toro Assn.*, 159 Cal. Rptr. at 580.

Similarly, here, the quarantined individuals ask that the taxpayers of Guam bear the burden and expense of their attorney's fees despite the general public not having traveled or being subject to quarantine. While many members of the public who indeed travel may benefit from the changes to quarantine that resulted from these cases, the general taxpaying public has not received a direct benefit through these litigations. In other words, the taxpaying public as a whole is not an "involuntary client" of the private attorneys who have filed these cases. In that sense, the costs of supporting the litigation falls out of proportion to the perceived benefit to the collective taxpaying public. For this reason, the substantial benefit doctrine does not apply here.

### b. The Court declines to apply the private attorney general doctrine.

As an alternative avenue of obtaining attorney's fees, petitioners ask the Court to adopt the private attorney general doctrine. The private attorney general doctrine generally permits the


ORIGINAL

recovery of attorney's fees when private parties seek the enforcement of a concern of public-wide importance and a great number of people stand to benefit from the litigation.

Here, Petitioners ask the Court to apply the doctrine because they "were the catalyst motivating the release of hundreds of passengers from mandatory quarantine." Memo. In Support of Attorney's Fees in Consolidated Quarantine Cases at 4 (Oct. 23, 2020) (filed in all cases). Petitioners also believed they "motivated a change in behavior:" "Petitioners in this case advanced not only the constitutional and statutory rights of citizens not to be deprived of their liberty without due process of law, but to ensure that the Respondent conformed its conduct to ensure that persons understand that they have fundamental rights that they cannot be deprived of even in the midst of a public emergency." *Id.*

The Court generally agrees that Petitioners generated changes to DPHSS' policies, including:

- o Following the *Igros* case, DPHSS began to offer laundry service and cleaning supplies to quarantined individuals. Prior to *Igros*, quarantined individuals spent 14 days without an opportunity to have clean clothes or a clean quarantine room.

- o Following the *Igros* case, DPHSS began filing section 19605 petitions for incoming passengers. This was the procedure it previously instituted in March 2020 with regard to passengers arriving from the Philippines, but stopped using for reasons never adequately explained to this Court.

- o Following the Court's decision in *Cruz*, SP0129-20, enforcing the fundamental rights of parents to raise their children, DPHSS altered its policy concerning unaccompanied minors. DPHSS allowed unaccompanied minors to complete a


ORIGINAL

fourteen-day quarantine at a rental lodging or personal residence with their parents or guardians. *See* Rev10.

- o Following the *Martinez* Decision and Order, the Governor rescinded the language in EO 2020-28 and EO 2020-29 which relied on 10 GCA § 3333 as the basis for quarantine. *See* EO 2020-33 (stating that section 3333 "does not adequately protect against the importation of COVID-19 by travelers to Guam" as it can "take several days for an infected person to have levels of the virus sufficient for detection by a test").

- o *Jones* urged DPHSS to pay closer attention to the medical conditions of quarantined individuals.

While these issues have had public-wide importance and affected a great number of people, the application of the private attorney general doctrine in Guam remains unsettled. The Guam Supreme Court has noted the existence of the doctrine but has not analyzed it in any case; also, at least one Superior Court case has passed on the issue. In *Chargualaf v. Garrido*, SP0049-17 (Dec. and Order (Nov. 23, 2017)), involving a writ of mandate over same sex marriages, Presiding Judge Alberto C. Lamorena III declined to apply the doctrine absent prior endorsement of the Guam Supreme Court and because the Legislature had not waived sovereign immunity in that instance.

Turning to other jurisdictions, this Court recognizes that there has not been universal acceptance of the private attorney general doctrine. Recovery under the doctrine has been allowed in states such as Hawaii and Minnesota and in countries such as the Federated States of Micronesia, and accepted and codified in California. However, the U.S. Supreme Court has



rejected its applicability in federal cases, deferring to Congress to establish under what equitable circumstances courts can depart from the American Rule.

The Court finds it not necessary to adopt the private attorney general doctrine here because of its holding above that the statute waives sovereign immunity. Also, similar to what Presiding Judge Lamorena held in *Chargualaf*, this Court declines to apply the doctrine absent further adoption and guidance from the Guam Supreme Court.

## 2. The Court declines to adopt other equitable or bad faith exceptions.

The parties' briefs engaged in some discussion on whether *Bautista* provides equitable grounds for relief. Specifically, Petitioners assert that sovereign immunity may be abrogated "where justice demands relief in equity." *Bautista*, 2015 Guam 23 ¶ 45. The Court has not found binding, relevant authority on this point and declines to address any equitable waiver given the finding of statutory waiver of sovereign immunity.

However, while not raised by the parties, the Court finds that the U.S. Supreme Court's Eleventh Amendment jurisprudence may support the award of attorney's fees. In *Hutto v. Finney*, the Supreme Court held that a District Court's award of attorney fees on the grounds that the state agency acted in bad faith did not violate the protections afforded to the state by the Eleventh Amendment. 437 U.S. 678, 692 (1978). The Supreme Court explained that "[a]n equity court has the unquestioned power to award attorney's fees against a party who shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." *Hutto v. Finney*, 437 U.S. 678, 690 n.14 (1978) (citing *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258–259 (1975)). When a state agency acts in bad faith by refusing to adhere to a court's order, an award of attorney fees is treated as an ancillary cost to the prospective order enforcing the law. *Id.* at 690-91.



In addition to enforcing a court order, there are two other justifications for the exception. First, litigants "in cases involving states or their officials. . . are entitled to receive a fair and efficiently managed trial of issues properly before the court." Note, Attorneys' Fees and the Eleventh Amendment, 88 Harv. L. Rev. 1875, 1892 (1975). Second, "[t]he prospect of a fee award can both encourage plaintiffs to persevere despite bad faith opposition and discourage defendants from employing. . . [tactics that] deliberately prolongs the litigation and enlarges its costs. . . ." *Id.*

Here, DPHSS demonstrated a pattern of disregarding its obligations to provide counsel and then disobeying and obstructing the Court's Orders which afforded that same right. First, starting with DPHSS' statutory obligations under section 19605(e), DPHSS has not in the more than fourteen months that have passed since this pandemic began, made any effort to develop a Public Health Emergency Plan that would implement a mechanism for the appointment of counsel at the government's expense. Second, despite the Court's ruling in *Igros*, DPHSS continued to take the position that section 19605 does not require DPHSS to inform incoming passengers of their rights; instead, it persisted that individuals may voluntarily consent to quarantine, thereby excusing it of the requirements under section 19605. Third, following the Court's September 25 Order Appointing PDSC, DPHSS objected to the Court's authority to appoint counsel to represent individuals entering quarantine. Fourth, DPHSS and its attorneys refused to provide incoming passengers with a form developed by PDSC and refused to provide passengers with PDSC's contact information unless a passenger did not consent to quarantine. Fifth, DPHSS refused to provide PDSC with a listing of passengers until approximately the tenth day of quarantine, compelling the Court to act so that quarantined individuals could be promptly consulted by their attorneys prior to their hearings.


ORIGINAL

DPHSS' actions to obstruct legal advice for quarantined individuals exacerbated an already time-compressed schedule to hear petitions. For persons who did not file individual petitions, DPHSS generally filed section 19605 petitions on the individuals' tenth day of quarantine--the same day it released the names of quarantined individuals to PDSC. Since DPHSS released individuals following their fourteenth day, PDSC had to race to contact dozens of persons each day to discuss their quarantine. The actions of DPHSS hampered the provision of legal advice and wasted time at hearings. Moreover, DPHSS' actions even after PDSC was appointed affirmed that DPHSS continued to prefer quarantined individuals to be deprived of legal advice even though Article 6 imposed an obligation on it to ensure that counsel is provided.

While the Court acknowledges that the Supreme Court of Guam has not recognized a bad faith exception to sovereign immunity, it has noted a related equitable exception. Where the government induces an individual not to bring a suit and the statute of limitations to the bring suit lapses, the government is estopped from subsequently asserting sovereign immunity. *See Bautista*, 2015 Guam 23 ¶ 45. Here, while there is no applicable statute of limitations, the government's pattern of disregarding its obligations to provide counsel and then disobeying and obstructing the Court's Orders which afforded that same right left the Petitioners without notice of their rights to seek relief from quarantine and to an attorney. The Court finds this similar to the Government inducing an individual not to bring a suit. Nonetheless, having found sovereign immunity statutorily waived, the Court need not rely on these grounds in awarding fees.

## VI. Conclusion

The Court holds that the Guam Legislature waived sovereign immunity for remedies for breaches of the conditions of quarantine. Such breaches include the failure to issue a directive to persons under mandatory quarantine, the failure to petition the court within ten days of



quarantining an individual, and the failure to notify such individuals of their rights to contest the quarantine and the right to an attorney.

For these reasons, the Court DENIES DPHSS' Motion for Reconsideration in *Igros*, SP0127-20, and confirms the award of attorney's fees for the Igros family.

The Court further GRANTS an award of attorney's fees for *Cruz*, SP0129-20; *Convento*, SP0131-20; *Martinez*, SP0132-20; *Jones*, SP0134-20; *Pang*, SP0137-20; *Ikei*, SP0138-20; and *Isaac*, SP0147-20.

The Court DENIES an award of attorney's fees for *Lang*, SP0130-20; *Esperon*, SP0135-20; and *Buckwalter*, SP0148-20.

The Court defers ruling on the applications for attorney's fees pending the conclusion of an evidentiary hearing for the following cases: *Tanetani*, SP0140-20; *Jenkins*, SP0149-20; and *Brantner*, SP0150-20.

Following that evidentiary hearing, the Court will issue a schedule for all parties entitled to attorney's fees to provide their statement of fees for the Court's review, along with deadlines for a response by DPHSS.

SO ORDERED this 29th day of April 2021.

HON. ELYZE M. IRIARTE
**Judge, Superior Court of Guam**

**SERVICE VIA E-MAIL**
I acknowledge that an electronic
copy of the original was e-mailed to:
R. Taimanao - Ayuyu, PDSL, AG
T. Fisher, Jacqueline Terlaje
Date 4/29/21   Time: 2:09 PM

Deputy Clerk, Superior Court of Guam

ORIGINAL

Appearing Parties:

Rachel Taimanao-Ayuyu, Esq., Law Office of Rachel Taimanao-Ayuyu for Petitioners Eugene T. Igros, et al.; Janella M. Cruz, et al.; Michelle Esperon; Takako Tanetani; and Brian E. Isaac

Thomas J. Fisher, Esq., Fisher & Associates, P.C., for Petitioners Sean Christopher Convento; and Christina Pang

Jacqueline Taitano Terlaje, Esq., Law Office of Jacqueline Taitano Terlaje for Petitioners Marcus Lang; Odessa Martinez, et al.; Trevin Jones; Chad Ikei, et al.; Katlyn Buckwalter; Joshua Jenkins; and Karen Brantner

Deputy Attorney General James L. Canto, II, for Respondents Department of Public Health and Social Services and the Government of Guam

ORIGINAL